BENSON, Administratrix, etc., Respondent, vs. CUTLER, Appellant.

*April 13 — May 15, 1886.*

*(1) Account: Findings of referee: Evidence.  (2) Specific performance: Costs: Discretion.*

1. The findings of a referee, stating the account between parties in an action for the specific performance of contracts for the sale of lands, are *held* to be sustained by the evidence.
2. In an action for specific performance of contracts for the sale of lands, where the defendant denied that plaintiff had any rights in the property, it is *held* that costs were properly awarded to the plaintiff.

APPEAL from the Circuit Court for *Waukesha* County.

Action to enforce specific performance of two contracts for the sale of lands. The cause was before this court on a former appeal. 53 Wis. 107. Upon the second trial the cause was referred to Warham Parks, Esq., " to state the amount due from the plaintiff's intestate to the defendant of the purchase price of the premises under the contracts mentioned in the complaint herein, principal and interest to the date of his report; and state, also, the actual value and amount of the improvements which the defendant made on said premises out of his own funds, principal and interest to the date of his report; and state, also, the rents and the amount thereof, which the defendant received from said premises, by him not paid over, principal and interest; and the balance due to the defendant."

The referee found, among other things, that the balance due to the defendant was $3,778.53. The court made and filed findings of fact and conclusions of law, in effect confirming the report of the referee, and directing that the plaintiff have judgment for a conveyance of the lands in question upon payment by her of the balance so found due

to the defendant. From the judgment entered accordingly the defendant appealed.

*J. V. V. Platto*, for the appellant.

*David W. Small*, for the respondent.

COLE, C. J. The questions of law involved in this case were decided on the former appeal. 53 Wis. 107. The case was sent back for a restatement of the account between the parties according to the basis stated in the opinion. Another accounting has been had before a referee, who seems to have made a very diligent and conscientious effort to get at the real state of the accounts between the parties. We have carefully examined the testimony, and see no reason for disturbing the findings of the referee, which were confirmed by the circuit court.

It is objected on the part of the defendant that the referee erred in stating the account in several particulars. We will briefly notice some of these objections. The referee was clearly right in deducting from the amount found due on the contracts December 8, 1871, the sum of $379.65. That matter was considered upon the evidence before us on the former appeal, and there was no new testimony given on the last trial which should change the conclusion at which we then arrived. The sum deducted was the amount found due on an adjustment of the accounts of the parties at that date. This was two years after the note of December 3, 1869, was given, which was presumably included in defendant's account.

As to the $560 item for building material mentioned in the bill of sale, we think it was properly rejected. The learned counsel for the defendant insists that the evidence is overwhelming and conclusive that this sum of money was paid Benson when the bill of sale was executed, and that the material went into the improvements. We are constrained to differ with counsel on this point, and think

that the defendant's letters disprove the claim that this was a real sale. They show unmistakably that this bill of sale was given at the suggestion of defendant for the purpose of placing this material beyond the reach of Benson's creditors. It was a mere sham and cover of property that really belonged to Benson.

The serious difficulty in stating the account is in ascertaining the value and amount of the improvements which the defendant made out of his own funds. The defendant kept no account of his expenditures, and, as some of the materials were furnished by Benson, it is impossible to get at the real truth of the matter. The referee allowed him for improvements made on the south half of the lot, $255, with interest to date. It is claimed that this sum is much less than the evidence shows the defendant must have expended. The testimony as to the cost of these improvements is vague and conflicting. The witnesses testify from estimates made as to the value of materials and labor necessary for making them, and differ widely. The referee says that it is impossible to give an itemized statement of the amount paid out in making these improvements; for while the defendant was an active party in making them, he so managed the business that he is now unable to show what had been expended. There is abundant evidence to sustain the finding of the referee on this point, including the rejection of the claim for grading; therefore it must stand. In respect to the improvements made on the north half of the lot, the same difficulty exists in determining what each party expended in making them. The referee found that the only practicable way to ascertain the amount which the defendant expended was to credit him with the cost of the whole building, and deduct therefrom the value of the materials and labor which the proof showed Benson paid for. Proceeding on that basis, the referee found that the cost of the building and improvements made on this part

of the lot was $2,750, which should be diminished by the value of labor and materials furnished by Benson, amounting to $1,022. We see no reason for disturbing this finding. There is certainly sufficient evidence to support it, as we understand the proofs in the case.

The next objection taken is to the allowance for rents. It seems to us there can be no doubt as to the correctness of the amount charged the defendant for the rent of the south part of the lot. The evidence shows that these premises were occupied by a responsible tenant, and that, with reasonable care and attention, the defendant could have obtained $200 a year rent for them, if he did not. It is said the defendant did not actually receive the amount of rent with which he was charged. If he did not, it was in consequence of his own gross neglect, because the tenant was responsible, and it might have been collected of him. The referee entertained the belief, founded on the testimony, that the tenant had in some way accounted to the defendant for his rent. But whether he had or not, it is very clear that the defendant is justly chargeable for such rent as he could, with reasonable care and attention, have received.

The referee rejected the claim for rent for the north half of the premises. There was a brick building on that part of the lot which was not completed or in a condition to rent when this action was commenced, several years ago. It had, however, been completed, and intelligent witnesses say might have been rented for $300 a year. But the referee allowed nothing for the rent of this building; neither did he allow any interest on the $1,728,— the amount which the defendant had expended in the improvement of that part of the lot. The referee, doubtless, thought it was equitable that the defendant should lose interest on his outlay, inasmuch as he had failed to realize rent as he might have done. It was plainly the duty of the defendant to rent the property as soon as it was in a condition to be rented, and

make it profitable to the owner. His claim for improvements made after he was ordered by the plaintiff, in August, 1877, not to put any more on the property, was sustained in this court on the ground that, under the circumstances, it was better for all concerned to have the building completed, so that it could be rented. The rent lost through his negligence would amount to more than interest on the sum he expended. He therefore has no reason to complain of the finding in that regard.

The court gave the plaintiff costs. This is objected to. The matter of awarding costs was in the discretion of the court below, but the record shows that that discretion was most righteously exercised in this case. The defendant denied that the plaintiff's intestate had any rights in the property, and claimed that the contracts had been surrendered, etc. The plaintiff was compelled to engage in this protracted and expensive litigation to enforce a performance of them. On every principle of law and justice she was entitled to her costs.

We have not attempted to discuss the evidence in this case, but merely state our conclusions as to the facts established by it. As we have said, the defendant kept no proper account of his expenditures as he should have done, and it is nearly impossible to ascertain from the mass of conflicting testimony with accuracy what his expenditures did in fact amount to. The intelligent and painstaking referee who investigated the case — heard the witnesses testify — has stated the amount which the defendant is entitled to receive on the contracts as a condition to executing the deed. We do not think any injustice has been done to either of the parties by his finding and report, which the court confirmed. There is no other point made which we deem worthy of notice.

*By the Court.*— The judgment of the circuit court is affirmed.